## FEARN a. GELPCKE.

*New York Superior Court; At Chambers, January*, 1862.

### SECURITY FOR COSTS.

Under 2 Rev. Stat., 620, § 1,—which allows defendant to require a non-resident plaintiff to file security for costs,—it is not imperative upon the court to grant an order for security for costs under all circumstances.

Where the defendant's application to compel a non-resident plaintiff to file security for costs had been unreasonably delayed, and the plaintiff's attorneys were unable to communicate with the plaintiff by reason of an insurrection,—*Held*, that the application should be denied.

Motion to require non-resident plaintiffs to file security for costs.

The plaintiffs were residents of Mississippi, and commenced the present action in December, 1860. The complaint alleged that the plaintiffs were " merchants and copartners.in trade and business, at Jackson, in the State of Mississippi." Issue was joined in January, 1861; after the cause had been noticed for trial several terms, it was, in October, 1861, on the application of defendant's attorney, reserved generally upon defendant's application.

The present application was based on an affidavit of the non-residence of the plaintiffs.

*Bernard Roelker*, for the motion.

*John M. Mason*, opposed.

MONELL, J.—By the standing rule of the Supreme Court, adopted at the January term, 1799 (*Rule* 14), it was provided,

that upon application of the defendant, a non-resident plaintiff might be compelled to file security for costs; and that until such security was filed, the plaintiff's attorney was liable for costs to the amount of one hundred dollars. The provisions of this rule were incorporated into the statutes upon their revision in 1828.

Under the rule, as it existed prior to the statute, it was the constant practice of the court to exercise a discretion in granting or refusing the order. (Ketcham *a.* Clark, 4 *Johns.*, 484; Jackson *a.* Bushnell, 13 *Ib.*, 330.) So, under the Revised Statutes, it has been held that the granting the order is not the absolute right of the defendant, but rests in the discretion of the court, whether they will grant it or not. (Robinson *a.* Sinclair, 1 *Den.*, 628; Florence *a.* Bulkley, 1 *Duer*, 705; Swan *a.* Matthews, 3 *Ib.*, 613.) In Robinson *a.* Sinclair, the court say, "the statute is not imperative upon the court to grant an order for security for costs, under all circumstances."

In the case before me the defendants were informed, at the commencement of the suit, by the allegation in the complaint, that the plaintiffs were non-residents of this State, and, in my view, they ought at that time, or within a reasonable time thereafter, to have applied for the order requiring them to file security for costs. The English courts have held, that the defendant must make his application promptly, after he knows of the facts entitling him to the order, and even before he has taken any subsequent steps in the cause. (3 *Chit. Gen. Pr.*, 633; 5 *B. & Ald.*, 702; 1 *D. & R.*, 348; 1 *Moore & Payne*, 30.) And Beardsley, J., in Robinson *a.* Sinclair (*supra*), says—"He (the defendant) cannot, without good cause shown, be allowed to lie by for months," before he makes his application.

I cannot find any justification for the defendant's delay in making his application for security in this case. He has waited until the unfortunate state of public affairs in the country has placed it beyond the power of the plaintiff's attorney to have any communication with his clients, or for them to furnish the requisite security. The liability of the plaintiff's attorney to the extent of one hundred dollars, continues, and, in my judgment, is all the security the defendants can now obtain, under the circumstances of this case.

The motion is denied, but without costs.

Since our report of the case of Power *a.* Alger was printed (*Ante,* 284), we have been furnished with the dissenting opinion of Mr. Justice Hogeboom in that case, which is as follows:

Hogeboom, J. (dissenting in part).—1. The rights of the parties depend on paper A. (See the substance of the document referred to, stated in the opinion at special term, *Ante,* 285.)

2. I think paper A. protects Lemuel Holmes for his debt, as well as Coffin, Holmes & Co. True, the recital refers to notes indorsed by Coffin, Holmes & Co., and the purpose of the assignment is declared to be to protect Coffin, Holmes & Co.; but when it comes to declare what they shall do with the proceeds of the assigned property, they are authorized to pay the Lemuel Holmes note of $700, and all expenses; and when said notes (which would include the Holmes note) shall have been fully paid, and said firm fully indemnified, then the sale and assignment to be void. They might have taken possession of all the books, and in such case would have had a right to retain and collect enough to pay and include the Holmes note. I cannot see that their omission to take possession is to defeat the assignment, or that the Holmes note was only to be paid in the event of their taking possession of the books. That would be too strict a construction of the agreement. They are trustees for Holmes as well as themselves.

3. Besides, the right to take possession of the books followed as a consequence of the assignment. It needed no express clause (except as to the debts which would thereafter accrue perhaps) to confer this power. It could never have been meant to depend upon the mere contingency of their obtaining possession of the books before the death of Coffin. The survivors, within the meaning of the contract, were just as much Coffin, Holmes & Co., as if Coffin himself had lived.

4. But they sought and obtained the aid of the court, when they had a right to do so, under the strict construction of the contract; that is, when the Hazard note (of Coffin, Holmes & Co.) was outstanding. The injunction was, therefore, proper; and the plaintiffs having, through the process of the court, obtained possession of the books, had a right to retain them till every debt secured by the assignment was discharged.

5. I know no reason why future debts (as between the parties) upon the books of Coffin, Holmes & Co. might not be assigned, as well as those already existing (Field *a.* Mayor, &c., of N. Y., 6 *N. Y.,* 179); but however that may be, there is a large amount of past assets of H. McArthur & Co.

6. It is no sound objection to a continuance of the injunction, or to a receiver, that Alger is abundantly able to pay. Here is an absolute right to the property. It belongs to the plaintiffs, unless the defendant will pay the debt. To say that he may keep the property for that reason, is to say that any rich man may keep his neighbor's property, simply because he is able to respond. Indeed, it may be doubted whether the plaintiffs are not absolutely entitled to the possession of the assets, instead of putting them into the possession of a receiver.

7. I do not think the assignment covers paper indorsed by Powers and Holmes individually. They did not purport to indorse as survivors of the firm; nor do they pretend to any express authority to do so. The assignment covers no other indorsements than those of Coffin, Holmes & Co., and these are not of that character. The payment of the latter notes would not have enabled Power and Holmes

to. sue Coffin, Holmes & Co. for contribution. The original liability was not legally continued.

8. My impression, therefore, is, that the order at the special term should be reversed, and that the injunction should be reinstated and a receiver appointed, unless the defendant will execute an undertaking to the plaintiffs, with two sufficient sureties, to be approved by a justice of this court, to the effect that the defendant will, within ten days after notice of the judgment in this action, pay over to the plaintiffs the amount due and unpaid upon the Holmes note, unless the court shall finally decide that the plaintiffs are not entitled thereto. The costs of this appeal should abide the event of the action.